at all. Ms. Castaneda. May it please the court. This is not a case that can be resolved on summary judgment and yet we are here on an appeal from a summary judgment. To issue the summary judgment, the district court resolved numerous genuine disputes of material fact, made credibility determinations, and drew inferences against the non-movement and in favor of the movements. This is directly contrary to the well-established standard for summary judgment. And I'd like to start today by discussing the Fourth Amendment claims against Officers Woods and Detective Wilson. The key issue here centers on probable cause. And I don't think that the parties dispute what the standard for probable cause is, but we do dispute whether it was met. And the key difference of opinion seems to be whether the facts in the record established a suspicion and a possibility of things, or whether they actually established that there was a fair probability that Mr. Reitz is the person who called 911. I also think that all the parties do agree that the evaluation for summary judgment with regard to the Fourth Amendment is a probable cause to believe that a false report was made. The events that took place with the SWAT team responding to the 911 calls that were anonymous from a blocked number never been determined to this day who made those calls. That exigency was over. SWAT breached the apartment and essentially discovered that every single thing that had been reported in the 911 calls was false. And although that certainly gave rise to a platform for an investigation of a false report, what it didn't give rise to was a probability that the address that was provided in the 911 call pointed to Mr. Reitz having made the call. That's what I don't understand. They're saying he made false calls about his own place to get his own place SWATed for lack of a, I guess that's a contemporary term if it's not objectionable to both sides. I thought you are supposed to SWAT someone you hate, not yourself. That would seem to be the more logical conclusion, the more reasonable inference, we should say in this context. And I don't believe you should SWAT anyone. By the question, I don't want to give that viewpoint. Of course, Your Honor. I don't believe that either. And we did discuss in our brief several alternative possibilities that Mr. Reitz's ex-girlfriend, who he had made a police report for theft on the prior year, might have done this. A disgruntled neighbor might have done this, although Mr. Reitz wasn't aware of any problems he had with neighbors. The upstairs neighbor that police talked to said he acted kind of weird all the time. It could have been an anonymous troublemaker. We don't know. We're not suggesting that the standard required the officers to exclude every other possibility. What we're saying is that any and all of these possibilities existed and the idea that Mr. Reitz was the person who made the phone calls, the 911 calls, was no more probable than any of those other when Officer Woods made his report or when Detective Wilson made his report, gave the case file to the district attorney, recommended charges be brought, and ended up executing the arrest warrant. So with Mr. Woods, again, or Officer Woods, excuse me, we're looking at the events that happened on the day of the SWAT breach, and the execution circumstances are over, and so now we're just investigating who made a false report, and I don't want to denigrate the importance of preventing false reports and having consequences for false reports, but we're not dealing with an emergency situation at this point. There's no evidence that Mr. Reitz was about to make a second false report or that the police would have believed it if it had needed to immediately detain Mr. Reitz, immediately take him to the law enforcement center, immediately do any of these things. That does not exist in our record. What the district court looked at and said supported probable cause was that the 911 caller gave a specific address and Reitz was the only person there, and that is just simply not enough to tie Mr. Reitz to the calls. But, in case it possibly might in some other scenario, Officer Woods, upon investigating these issues, found hard evidence that Mr. Reitz did not make the 911 calls. Mr. Reitz's phone had a call log. The call log showed the last call he had made was hours before the first 911 call. That log showed that the call was made to a girl in the 713 area code. And there was no evidence that calls had been deleted from the log. So, although certainly there's a technological possibility that somebody can delete a call from a log, it's a possibility. It's speculation. It doesn't tie Mr. Reitz to the 911 call. Can you go over which each individual, Wilson, Woods, Tatum, what their chain in the causation here? Yes. They are sort of built on one another. Officer Woods was the officer on the scene that day. He found out this information that there was no hard evidence. There was hard evidence Mr. Reitz did not make the 911 calls, and there was no evidence that he did make them. And did he pass that along to his colleague? He did. He put that in his report. All of it? There's some evidence this way and some equivocal? He passed it along in a report, in his report of that day. And so, to anyone who read the report, they would have received this information. The problem with Mr. Tatum, or Detective, or Investigator Tatum, is that he never read the report. Okay, but what did Woods do wrong, then, for the, under what's clearly established that he did wrong, if he wrote in a report something that has both good and bad, and it appears to be his impressions of the day? He contained Mr. Reitz's detention. He transported him to the law enforcement center. He detained him further at the law enforcement center, and searched his phone at the law enforcement center, and found further information. And based on all of those detentions, and finding further information, the police assigned an investigator, and that investigator was Detective Wilson. What's your best case that he needed to stop detaining and investigating at that point? That he has lacked probable cause to continue detaining, and continue investigating with Mr. Reitz in detention. And those cases would be the Clunn case, Garcia, Zavala, and the Watson and Lockett. Now, I will say, those cases don't address this issue of, does he, the specific issue of does he have to stop detaining, but all of those cases address what you have to have for probable cause to detain someone, and without that probable cause, Officer Woods had no right to make Mr. Woods continue to stay in the police car, transport him to the law enforcement center, keep him at the law enforcement center, and conduct the investigation that way. It's not, we're not saying that a continued investigation with Mr. Reitz free, and, you know, on his own, might not have been justified, or allowed, we'll say permitted. But what we are saying is that he restrained him. It is undisputed in the record that Mr. Reitz was not free to go, and that when Mr. Officer Woods asked him if he was willing to go to the LEC, if Mr. Reitz had said no, Officer Woods would have compelled him to go. So that's where we're saying the wrong action happened. With regard to Mr. Officer Woods. Now, in addition to that, you know, his report was used, or was used, by Detective Wilson. So, so it was kind of folded in to improprieties that happened with Detective Wilson. But that's not on Woods if Wilson's doing something. That is correct. That is on Wilson. And so, with Detective Wilson, we've got three things in the record from, well, I guess four, four things in the record from him. We've got his October 2nd, 2015 report. We've got his November 10th search warrant affidavit. We have his December 8th supplemental report. And we have his execution of the arrest warrant. The two things that I think are informing the Fourth Amendment violation claims against Detective Wilson are the October 2nd report, which was used, which he provided to the ADA for use in drafting the arrest affidavit, the probable cause affidavit, and also his execution of the arrest warrant. And all that Wilson adds to Woods is the following, and this is in his report at 1411 of the record. He requested copies of the 911 tapes. He called Mr. Reitz. He concluded that, quote, it appears that the recorded calls are from the same person. He provides no underlying facts to explain why. Did he listen to the 911 tapes? Did he compare the voices side by side or one after the other? How much time elapsed? Did he listen to the recording of his call with Mr. Reitz or just have the conversation? How many times did he listen to the recordings? What about the recordings led him to conclude that the, that the voices were the same? He doesn't say. And as a result, the, the probable cause affidavit doesn't say either. A non-expert Professor Wallace listened to the recordings and picked up distinct differences in the voices. And... But being wrong doesn't mean you get sued. It doesn't mean you get sued. But there are other indicia that Detective Wilson did not have a basis to conclude without fudging things that there was probable cause here to, to, to conclude that Mr. Reitz is the person who made the 911 calls. You may have something else you want to talk about, but we didn't do Tatum yet. That's all right, Your Honor. Um, I will say that Wilson admits that he made false statements in his report on October 2nd about what Woods had reported. And if you look at those false statements, they are directly pertinent to whether probable cause exists. Um, that Mr. Phone had listed the Abilene, the 911 non-emergency numbers as last calls and that when, uh, police called those numbers from his phone, those numbers came up unlisted or blocked. Those are directly opposite of what happened. And if you put in the correct facts, that undermines the idea that with those facts, plus listening to the tapes, that Detective Wilson truly believed that the voices were the same and that Mr. Reitz had made the phone calls. Um, with regard to, and, and on that note, the district court, I will note, inferred that Mr., uh, or Detective Wilson didn't have doubts, but those falsehoods and other evidence in the record, and we've covered that in the brief, um, show that any inference about whether Detective Wilson had doubts should be made in favor of Mr. Reitz, not Detective Wilson. With regard to Tatum and Taylor County, um, I think the foundational premise here is that, uh, for both sides, if you look at their brief at page 14 of their PDF, um, the Taylor County Tatum brief, they contend it's not unconstitutional or illegal for a certified peace officer to sign an arrest warrant without personal knowledge, but relying on the statements and investigations of reliable sources such as other officers. If Tatum had read the reports of Woods and Taylor County, he would have seen everything that was left out of the arrest warrant that was on the other side of probable cause, that should have shown there's hard evidence that these calls were not made from Mr. Reitz's cell phone. He would have seen all that. He also would have seen that Detective Wilson's conclusion that the, uh, that the voices were the same was entirely conclusory, that there was no supporting facts to justify it, that it, it doesn't, it's not necessarily reliable. And the point of the officer affidavit is to provide indicia of veracity and the basis of knowledge, um, that's in Stettigast. And the other thing that would have happened is that Tatum could not have been accused of reckless disregard. He would have received information from other officers and he could have said, hey, I signed the affidavit based on the information I got from other officers. Instead, he signed an affidavit based on the ADA's version of events. And that is just something that pretty much destroys the requirement of having the officer affidavit. With regard to the First Amendment claims, I do want to mention there was a 28J letter filed, uh, citing Villarreal, which is a case that actually was already discussed in Tatum and Taylor County's brief, um, although for a different, uh, or Woods and Wilson's brief, excuse me, for a different proposition. And the question there is just whether there is any evidence of curtailment, um, of Mr. Reitz's First Amendment speech rights. Um, and his affidavit does show that although he continued to speak with a reporter, he was apprehensive in doing so and the fear that he felt that restrained or curtailed his communications. Thank you. All right. Thank you. You've reserved your right to rebuttal. Let's see. We'll hear first from the city attorney. Good morning. May it please the court. My name is Kelly Messer. I represent Jimmy Woods and John Wilson. First, I'll address the Fourth Amendment claims. The undisputed facts show that Woods had probable cause to keep Reitz in custody as a terroristic threat suspect once the exigent circumstances had passed after his initial seizure. And these, the facts, are undisputed. Um, there's no genuine issue of a material fact. Um, there was a, uh, male caller giving a specific apartment number and address. He said he had shot his girlfriend in the eye and was holding her hostage. The caller indicated that he had weapons and would start shooting. Um, and when police went in, Reitz was the, Reitz was the only person found with that address. Um, and then, then there were, there are more, more facts. I won't list all of them unless the court has questions. But, uh, I, I do want to note that, uh, the appellate, uh, has stated that the phone was conclusive, what was on his phone was conclusive evidence that he did not make the call, and that is not what the record says. The record says that, that the last call was from a 713 area code at 945 in the morning, but they were unable to pull up the deleted call logs. That's why, uh, Woods actually sought consent to have the, the phone searched, and then they were unable to recover any additional information. But I submit to you that Reitz fails, Reitz fails to show that he, that Woods, he, he has to prove that Woods could not have reasonably believed that he had probable cause, or in other words, that all reasonable officers would have to have believed that they did not have probable cause to keep him in custody, and he fails to do so. And there are no disputed issues of material fact in that regard. So do you have probable cause to keep any resident that you find at the home or who arrives home or after there's been a call like this of the place? Because if they're the same gender as the caller, uh, because it seems that it's really unlikely that you would call on yourself for a swatting, uh, that's, that's, that seems not really logical. Well, it depends on the totality of the circumstances, obviously. For a swatting. Now, you might call on yourself if you actually are holding someone hostage because you're trying to, in the moment, grappling with that and you're having a breakdown, but. Well, there's no other one person that they found that would have had the knowledge of the exact address that a male was there, that he actually did have a girlfriend, and then there's the conflicting. What about the ex-girlfriend? Yes, Your Honor. That, in my mind, that is a suspicious circumstance. That fact adds to the reasonable suspicion. I think you, I mean, adds to the probable cause. I think you still have probable cause, but the fact that he did have a girlfriend and he said, I haven't had this girlfriend since, nine months ago we broke up because I filed a theft case on her. And then the neighbor says, well, he acts weird all the time and a girlfriend is coming and going. There were some inconsistent, there was inconsistent information from both he and the neighbor that there was a girlfriend. And so all of these, all of these facts kind of lined up and there was no one else that it was pointing to. He knew his own apartment. So how did it line up? It seems like that would cut against that it was him and that it was really something to do with his girlfriend retaliating against him. And I don't know whether his girlfriend had anything to do with this. Please don't think I'm surmising that. Right. Well, the fact that it was a male voice in his exact apartment number address and. She would have that information and be able to get somebody to call. Well, there was no other person at that time that they had been able to identify as making the call. And also, this alone wouldn't be a fact that would show probable cause, but it definitely added to it, the fact that he had just come back from a psychiatric appointment and he was having some kind of potentially having some kind of issues with his girlfriend. And I think those facts all taken together, considering the totality of the circumstances, shows that would have probable cause to believe he actually made this call. People don't always do rational things. But after they're sure that there's no one in danger, why are you? Why are they holding him? Then it was an investigation as to a terroristic threat. So he was that he then became a suspect for terroristic threat. And as far as Wilson and the Fourth Amendment claims, he can only be subject to a false arrest claim for his part of the investigation and writing the report against himself, that he's doing this. I mean, I guess that he's holding someone. No, Your Honor. Really? I don't know. It would be for caught for making an emergency call that causes a reaction the way it was originally, you know, submitted was the terroristic threat causing a reaction by an official organized to deal with emergencies. And so it was calling and making... Why isn't that just a false 9-11 call? I mean, how does that rise to terrorism? Well, they're thinking this met the elements of terroristic threat. I mean, a false 9-11 call, once they get there and don't see anything that remotely resembles what was described, there's no female, there's no nothing. I mean, at bottom, at best, you know, a false 9-11 call. But I mean, what is the terroristic threat? Well, that's ultimately, Your Honor, what they did. They did ultimately file it as a false alarm. But the terroristic threat, a person commits an offense if he threatens to commit any offense involving violence to any person or property with intent to, one, cause a reaction of any type to his threat by an official or volunteer agency organized to deal with emergencies. But it's just an elaboration on the question Judge Elrond asked. Given the circumstances, when they get there and determine none of this looks similar to what was said, why does that expand into probable cause to detain the guy on this terroristic threat notion? I mean, what are the extraordinary features that even a reasonable officer should envision is here. I mean, what? I mean... Well, Your Honor, the facts are undisputed. And when the facts are undisputed, it is a question of law as to whether probable cause exists or not. And the exact apartment number and address was given, a male caller that said he had shot his girlfriend. When police went in, he was the only individual there. They also did find that pellet gun. Police discovered that he had returned from the psychiatrist an hour before and that he did actually, in fact, have a girlfriend. So several things did line up. And I submit to you that the appellant has failed to show that all reasonable officers... It just sounds like justifying a bad judgment. Well, I submit to you that it met probable cause in order to keep him into custody because also at that time they were unable to determine whether those calls came from his phone. Okay. Keep going. As far as Wilson, he can only be subject to a false arrest claim for his part in the investigation and report if the actions of the independent intermediary being the district attorney in their drafting and issuing of the warrant were tainted by him, Wilson, and if the warrant otherwise showed no probable cause to arrest. So the district attorney reviewed the entire file, read not just Wilson's report but Wood's report, Gray's report, all the evidence submitted, drafted the affidavit, which Tatum signed, and then Wilson executed that warrant as ordered by the judge. So I submit that his role was so attenuated that he is entitled to qualified immunity, but nevertheless, for the sake of argument, assuming he would be considered to have actually assisted in the preparation of the warrant, he could only be liable if he deliberately or recklessly provided false information that resulted in the issuance of a false, of a warrant without probable cause. If you look at that warrant, it lists all the facts that I had just stated. It doesn't, and now there was a discrepancy between Wilson's supplement in the report and Wood's supplement, and as appellant's attorney noted, Ms. Castaneda, she says that it said that non-emergency calls were listed as the last calls, and then that when they tried to call the 911 number from Wright's phone, it came up blocked, and those conflicted with Wood's part of the report, but those were not in the probable cause affidavit. They weren't even listed. The only thing that was incorrect in the affidavit was the date, which was also correctly stated, and that incorrect date wasn't even provided by Wilson. So if you look, if you look, the warrant, the affidavit and warrant for arrest absolutely had probable cause, and the other part of it that was added at that time was that Wilson had spoken with Wrights, listened to him speak on the phone, listened to that recording in the 911 calls, and it appeared to him that they were the same caller. With regard to the First Amendment claims, viewing the facts in the light most favorable to Reitz, I apologize that I'm mispronouncing his name, he fails to allege that he suffered an injury, either by Woods or Wilson, that would chill a person of ordinary firmness from exercising his First Amendment rights, and so the Fifth Circuit, this court, has held that the plaintiff must show that there is some injury, some curtailment of speech. The ordinary person standard might be the standard in other circuits, even when the plaintiff's speech is not chilled, but in the Fifth Circuit there still must be some curtailment. So if this plaintiff's speech is curtailed, even just a little bit, but an ordinary person still wouldn't be deterred from exercising their rights in the very same circumstances, then there is still no constitutional violation. And so if you look at what occurred, Reitz said, I cooperated with her, being the reporter, but I was apprehensive because Woods had called in a threatening way when he was returning Reitz's call, and he started getting scary phone calls from Wilson. But he communicated with Wormell, the reporter, on September 19th and October 13th, right after he had spoken to Wilson on the phone, and there are text messages that Reitz sends with Wormell on the 13th. You have a red light. Yes, Your Honor. You have a red light. Yes, oh, excuse me. I apologize. I just ask that you affirm. Okay. Thank you. All right. Thank you, ma'am. All right. Mr. Wagstaff. May it please the court, Robert Wagstaff here on behalf of Investigator Tatum with the Taylor County's DA's office and along with the Taylor County DA's office. This court in 1989 in Bennett v. The City of Grand Prairie decided a lot of the issues, if not all of the issues, that had been raised against Defendant Tatum. And that case is similarly analogous in that the affiant was not involved directly with the investigation. The affiant relied on the investigating officers and what they claimed, and there was a mistake, a factual mistake. Here we have a date that's factually incorrect in the preface and in the preface in the Bennett arrest warrant there was also a mistake that was then in the subject matter of the affidavit was corrected as here. The October 13th date was corrected to the correct September 4th date in the actual arrest affidavit itself. And so what you had is, and the Bennett court looked at these analysis and okay, would it be better if one of the investigating officers was the affiant? They said yes, but it's not necessary. And in this case, Detective Wilson was actually supposed to be the affiant. He was unavailable. They then had set it up for another of the DA investigators to sign it, Mike Phillips, but he wasn't available so Investigator Tatum ended up signing. And on its fate... Do you agree that Tatum has a responsibility to make sure he is in good faith of relying on the authority and what they said? That that's his responsibility since he's signing the affidavit? That he can't just cherry pick from the report? He needs to give the totality of the relevant circumstances so that the judge, the person authorizing would be comfortable? He can't just cherry pick from the reports, can he? I don't believe he can, but I don't believe he has to. In this situation, if you read it and on its face it is objectively reasonable to assume that in this case a false report was made, then I would submit there's no reason and there's no duty for him and the law does not require him to then investigate further. They have certainly taken the position that he should have talked to the officers or looked at all the reports. Doesn't he have a duty to look at the reports? He can't just look at the drafted affidavit, can he? Sure. He has to look at what's the basis for it so he knows if it's true or not. Why can he not rely on the Assistant District Attorney who is being the gatekeeper as to whether or not it raises to the level of probable cause? Why can't he rely on the Assistant District Attorney who has looked at all these reports and has provided this information? It's no different, in my estimation of the law, if an investigating officer gets information from an informant and then passes that on to the officer that's the affiant, that affiant didn't have to then go talk to the informant. It's all within the investigative officers, but here the ADA arguably, and I want to know what case says it doesn't, and we're real familiar with Melton and Franks around here, broke the causal chain between the officer's reports and the probable cause affidavit, the ADA's involvement, and so before he signs it, he has to make sure that it fairly represents the true nature, that's because he's the affiant, it's his responsibility. He is not the officer who's relying on the other officer's reports, who has knowledge in general. But why is that different than relying on the other officer? Why is that different than, I mean, to me it's no different. If one officer, in a complex criminal investigation, there may be ten officers doing the investigation. One officer then uses that information to put together an arrest warrant, and so I don't see why that's any different than the DA being that one officer as opposed to one of the officers. Why is the DA not the officer? He's an officer of the court, just like those officers are, just like the affiant is. So he's just signing his name. He's not saying, I think this is accurate or true. He's just signing his name. He doesn't have to verify or look at anything. He's just signing his name. Well, he has to look at it to make sure that it rises to the level. He has to use his experience. He's a 40-year peace officer certified by the state of Texas, and he knows Woods. He knows Wilson. He knows these people, and he knows they're to be credible. He knows the DA is going to look at the very stuff that you're saying that he should look at. Well, even under our case law, an affiant officer who receives information from other officers through an intermediary, the Fourth Amendment may require the affiant officer to reasonably apprise himself of the basis for the intermediary statements under the Webster case. Right. If there's an issue, if there's something that you look at on his face and you think, well, that doesn't sound right or that doesn't smell right or that doesn't, then I would agree, but if you look at this affidavit and what Investigator Tatum looked at, there was no reason for him to question the issue of whether or not arrests had probable cause for a false report. He didn't know at all whether there was any – what the things he was saying in his own affidavit were accurate. I mean, does any affiant – they don't have that personal knowledge. No, they don't have to have personal knowledge, but even look at the, oh, we got a report that says that here, so I can say that. Well, does the report say anything else I need to be aware of? That sort of process, even with regard to officers and officers, you have to do that under Webster. Well, and again, I would submit that it is perfectly fine to rely on another officer to do that, and it's perfectly fine to rely on the assistant DA to do that. And that gives it another basis of, okay, somebody else is looking at all this stuff. Then he reads it, and assuming that it on its face is objectively reasonable, which it clearly is, then it's okay for him to sign that. How do we know that the ADA did that? Well, the ADA's – there's no evidence that he didn't, and it's their burden to prove that he didn't, not ours. The evidence is, you know, before this court and before the trial court was that you've got the objective reasonable basis met. You have clearly in the affidavit the facts that give rise to the probable cause for a false report. And then you have a, you know, a judge or magistrate certifying it, as this court has held before. That gives it even – even makes it more difficult for you to disturb the probable cause affidavit. And so – The opposing counsel is challenging it. They're saying that because it's only one-sided in the affidavit and doesn't give the true picture of the facts, it creates a distorted picture. They are challenging that the ADA or whoever drew up the affidavit and he therefore shouldn't have signed it. Well, there's no duty to put every fact in the affidavit. But you have to give a reasonable picture of the circumstances. You can't leave out key things that you know to the contrary. Well, I mean there's tons – in any investigation, there – in all likelihood, there's lots of contrary – or potential contrary facts. I mean – But obvious contrary facts that are already known by the officers investigating that are in their reports. But does that put the duty on – and I submit that it doesn't under the law – put the duty on Investigator Tatum to then do further investigation when he knows these officers, he knows the ADA has looked at it and done everything, and on its face it says what it needs to say for probable cause and to be objectively reasonable. And without that deliberate indifference or – you know, you don't defeat qualified immunity. So he still should have qualified immunity, even if everything you're saying is correct, Your Honor, and that he should have gone and read the reports and compared it and there should have been other stuff included. That doesn't change whether Investigator Tatum has qualified immunity in this circumstance and in this situation. I'll briefly address the Monell issue on the DA's office. There's no evidence that this policy has created problems in any other circumstance. There's no evidence – if we assume there's a policy. And if – and the policy is not specific to, oh, we're going to have somebody sign it that doesn't know anything about it. Wilson was supposed to sign it. He wasn't available. So, I mean, there's not even a policy that rises to the level of unconstitutionality. And so I will finish there. I appreciate the time. Thank you. All right. Thank you, sir. All right. Back to you, Ms. Castaneda, for rebuttal. The court is correct that it's not just the date that we're talking about in the probable cause affidavit. There are facts that are omitted that are directly pertinent to the facts that are contained in the probable cause affidavit. The biggest one is that the statement that Mr. Reitz had the non-emergency 911 number saved in his phone two times. Okay. But it doesn't include the other facts that say – didn't show that he had called those numbers that morning. In fact, his phone showed he hadn't called those numbers. And when those numbers were called from his phone, they showed up as not blocked, whereas they were blocked on the 911 calls. No, you don't have to include every single fact in the report, but you do if you say one fact that creates a misleading impression. You're going to need to include the other facts because otherwise the magistrate can't evaluate whether there truly is probable cause. What's the best case for that? For including – When you say one thing, you need to say the other side of that one thing so that you don't create a misleading impression. It would be the totality – and I'm sorry, Your Honor, I don't remember the name of the case, but we identify it in the brief in our discussion talking about how the magistrate is supposed to be making the probable cause determination from the totality of the facts and circumstances, and that information is supposed to be provided by the officers in justifying their evaluation of probable cause. With regard to the ADA preparing the affidavit and Officer Tatum just simply relying on the ADA to do it right, there is no case that would support that approach. If the ADA did the things that were supposed to be done instead of Officer Tatum, the ADA should have signed the affidavit. Why couldn't the ADA sign it? Because an officer needs to sign it based on information from other officers. The affiant is supposed to provide indicia of veracity and the basis of knowledge in the report and to make sure that they're correctly stated and correctly meaning completely stated as much as materially necessary in the affidavit. And here, Investigator Tatum, had he read the reports, would have seen there was material information omitted, material to the magistrate's evaluation of probable cause. He also would have seen that the key piece of evidence provided by Detective Wilson about the voices sounding the same was supported by absolutely no underlying facts. It was just a conclusion in the report. And yes, actually, in this case, because that report was conclusory, in order to actually make the statements that he made, Investigator Tatum would have needed to go to Wilson and say, hey, what made you think this? Oh, okay, that makes sense to me. I'll sign this affidavit. But he didn't. And that's what the officer requirement in the affidavit is for, is to make sure that the officer is getting the information from other officers and not from the district attorney and that the officer has sufficient information from the officers to say in an affidavit, this is true and correct and this is what you need to know. Is there clearly established law that says you can't get it from the district attorney? I did not find a case saying you can't get it from the district attorney. I think mainly because nobody's ever made this argument before in a reported case and because the law clearly talks about getting it from other officers. And for everybody, this seems to be enough. This is not going to cause a huge shift in law enforcement. I understand that qualified immunities always say we have the two prongs and it has to be clearly established. I do, Your Honor. But I don't think that you can say that an officer who sees that an affidavit has been drafted based on two reports that comprise three pages total text, four pages of paper, doesn't recklessly disregard the truth when he says this is all based on my personal knowledge, indicating at least personal knowledge of the reports, and he doesn't bother to go read the reports. I don't think that's a stretch. And I do think that that is enough for us to surmount qualified immunity. I think definitely the evidence is sufficient to create a genuine issue, a genuine dispute over whether Taylor Counter has an official policy on this. The DA has said we do this all the time, and there wasn't much argument with that here. And with regard to Wilson, I will say that the omitted information about the phone calls in the arrest affidavit and ties directly to information that Wilson got wrong, those two false statements that he put in his report from Woods, misstating what Woods had said, those go directly to the inability of the ADA to put more information about the calls into this warrant because they weren't clear about who was telling the right story there. And so that tainted the ADA. That undermines the idea that Wilson had probable cause and had facts, and it definitely is enough to create at least a question of material fact that precludes summary judgment. All right. Thank you for your time. Thank you, Ms. Castaneda. Thank you, counsel on the other side. I appreciate the briefing and argument in the case. We'll sort it out.